PHILLIP A. TALBERT
Acting United States Attorney
SHEA J. KENNY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:15-cr-0237 TLN |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| DEBORAH HOLLIMON, | |
| Defendant. | |

## I.   INTRODUCTION

**A.   Scope of Agreement.**

The indictment in this case charges the defendant with violations of 18 U.S.C. § 1341 – Mail Fraud [Counts One through Ten] and 18 U.S.C. § 1028A – Aggravated Identity Theft [Count Eleven]. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

PLEA AGREEMENT                                         1

concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to Count Two of the Indictment, which charges violation of 18 U.S.C. § 1341 – Mail Fraud. The defendant agrees that she is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that her conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims

covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged from the periods of September 1, 2012 through October 1, 2015. The amount of restitution will be approximately $569,168 dollars. Defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court.

### C. Fine.

The defendant reserves the right to argue to Probation and at sentencing that she is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is her burden to affirmatively prove that she is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

### D. Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### E. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or

providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### F. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if she fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, she will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above, above.

### G. Agreement to Cooperate.

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

### III. THE GOVERNMENT'S OBLIGATIONS

### A. Dismissals/Other Charges.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), III.B.3 (Reduction of Sentence for Cooperation), VI.B (Estimated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral

Attack) herein.

    **B.**     **Recommendations.**

        1.     Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range as determined by the Court.

        2.     Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

        3.     Reduction of Sentence for Cooperation.

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if she provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that she must comply with paragraphs II.H and not violate this plea agreement as set forth in paragraph II.E herein. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.

The defendant understands that the government may recommend a reduction in her sentence of less than 50% or no reduction at all; depending upon the level of assistance the government determines that the defendant has provided.

The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion. In particular, the defendant agrees not to try to file a motion to withdraw her guilty plea(s) based on the fact

that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following sentencing, the government may move for a further reduction of her sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

    4.  Concurrent Sentence.

The government will recommend that defendant's sentence be served concurrently with the sentence she is currently serving in the matter of *United States v. Hollimon*, 4:19-cr-00292-GAF(1) (W.D. Mo.).

  C.  **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

IV.  **ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty:

  A.  **Mail Fraud, in violation of 18 U.S.C. § 1341 [Count Two].**

The elements of mail fraud, in violation of 18 U.S.C. § 1341, are as follows:

First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an

essential part of the scheme.

The defendant fully understands the nature and elements of the crime charged in the indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose in connection with the count to which the defendant will plead guilty pursuant to this agreement are as follows:

    1.    Count Two – Mail Fraud, in violation of 18 U.S.C. § 1341

The maximum penalty for mail fraud in violation of 18 U.S.C. § 1341 is twenty (20) years of incarceration, a fine of $250,000, a three (3) year period of supervised release, and a special assessment of $100.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B. Violations of Supervised Release.

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two (2) additional years imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the

guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.    Stipulations Affecting Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1. Base Offense Level: **7** (U.S.S.G. § 2B1.1(a)(1))

2. Specific Offense Characteristics:

    a. Loss Amount: **+14** because the intended loss was more than $550,000 (U.S.S.G. § 2B1.1(b)(1)(H))

    b. Victims: **+2** because the offense involved 10 or more victims (U.S.S.G. § 2B1.1(b)(2)(A))

    c. Identity Theft: **+2** because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification (USSG 2B1.1(b)(11)(C))

3. Adjusted Offense Level: **25**

4. Acceptance of Responsibility: See paragraph III.B.2 above

5. Criminal History: The parties do not estimate or stipulate to any criminal history calculations. The defendant is permitted to object or otherwise challenge any criminal history calculations determined by the Probation Officer. For its part, the government is permitted to argue in support of any such calculations by the Probation Officer.

The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a). The government will recommend a sentence at the low-end of the applicable Guidelines range.

## VII.    WAIVERS

**A.    Waiver of Constitutional Rights.**

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative

PLEA AGREEMENT                                    9

defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on her behalf; (f) to confront and cross-examine witnesses against her; and (g) not to be compelled to incriminate herself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which she is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate her plea, dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.E herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty. The defendant and her counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

///
///
///
///
///
///

PLEA AGREEMENT          11

## IX.   APPROVALS AND SIGNATURES

### A.   Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 5/23/2021

DAVID FISCHER
Attorney for Defendant

### B.   Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated:

DEBORAH HOLLIMON
Defendant

### C.   Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: 5/26/2021

PHILLIP A. TALBERT
Acting United States Attorney

SHEA J. KENNY
Assistant United States Attorney

PLEA AGREEMENT                          12

EXHIBIT "A"

Factual Basis for Plea(s)

From September 2012 through September 2015, defendant DEBORAH HOLLIMON and others defrauded the State of California Employment Development Department (EDD) through a scheme to fraudulently obtain Unemployment Insurance (UI) benefits. This was done through a "fictitious employer" scheme.

In general, the manner and means of the scheme was as follows. First, the fictitious company was created by contacting EDD. After providing information required by EDD, such as the business owner's name, SSN, and business name, EDD provided the schemers with an employer account number (EAN). The schemers then used the EAN provided by EDD to submit a DE-9 or DE-9C Wage and Withholding Report indicating the number of employees at the company and the wages paid to those employees. After the Wage and Withholding Report forms were submitted, HOLLIMON would contact EDD posing as one of the employees reported on the forms and request unemployment benefits. After EDD verified that the system reflected that wages had been paid to the employees, EDD would file the claim and mail the first continued claim form to an address provided by the claimant.

During the course of the scheme to defraud, at least five fictitious businesses were registered with EDD: KB Janitorial, Come on Buy Apparel, C&D Fabrics, Elmer's Fashion, and Decorative Designs. These businesses were entirely fictitious as portrayed to EDD and did not employ any individuals or pay any wages as reported on the DE-9C forms. Over 100 fraudulent unemployment claims were filed based on wages reported to EDD for these companies. All, or almost all, of the individuals who were reported as fictitious employees of these companies were actually victims of identity theft. Many of them resided in Minnesota and have never worked within California. Employment taxes were never voluntarily paid for any of the employer accounts. HOLLIMON used EDD's online tool, called eApply4UI, to file for unemployment insurance benefits using the names of the fictitious employees. After EDD approved the fraudulent claim for unemployment benefits, EDD would send a Bank of America debit card to the address designated by HOLLIMON, including on the dates listed in the Indictment. Once HOLLIMON received the EDD debit cards, she would activate the debit cards. Once activated, HOLLIMON would typically then use the debit cards to access and use the fraudulently-obtained funds.

Specifically, on or about April 26, 2013, an EDD Bank of America debit card issued in the name of Deborah Hollimon was mailed using the U.S. Postal Service (USPS) to an address designated by HOLLIMON. On or about November 5, 2013, an EDD Bank of America debit card issued in the name of Person A was mailed using the USPS to an address designated by HOLLIMON. On or about February 4, 2014, an EDD Bank of America debit card issued in the name of Person B was mailed using the USPS to an address designated by HOLLIMON. On or about September 30, 2014, an EDD Bank of America debit card issued in the name of Person C was mailed using the USPS to an address designated by HOLLIMON. On or about September 30, 2014, an EDD Bank of America debit card issued in the name of Person D was mailed using the USPS to an address designated by HOLLIMON. On or about September 30, 2014, an EDD Bank of America debit card issued in the name of Person E was mailed using the USPS to an address designated by HOLLIMON. On or about September 30, 2014, an EDD Bank of America debit card issued in the name of Person F was mailed using the USPS to an address designated by HOLLIMON. On or about September 30, 2014, an EDD Bank of America debit card issued in the name of Person G was mailed using the USPS to an address designated by HOLLIMON. On or about May 12, 2015, an EDD Bank of America debit card issued in the name of Person H was mailed using the USPS to an address designated by HOLLIMON. On or about May 14, 2015, an EDD Bank of America debit card issued in the name of Person I was mailed using the USPS to an address designated by HOLLIMON.

HOLLIMON was captured in multiple ATM photos withdrawing money from the fraudulent claims, using the Bank of America debit cards issued in the names of identity-theft victims.

PLEA AGREEMENT                                A-1

HOLLIMON was also observed during surveillance using ATMs to withdraw money from fraudulent claims.

During the course of the scheme, HOLLIMON filed, or caused to be filed, over 100 fraudulent unemployment insurance benefit claims, in 84 different claimants' identities. In total, these fraudulent claims had an intended loss amount of approximately $882,991 (the amount of the authorized payments by the EDD on the fraudulent claims), and resulted in approximately $569,168 in fraudulent UI payments actually paid as a result of the scheme.

I have read and carefully reviewed the above Factual Basis for my plea with my attorney. I agree that as it concerns my conduct, it is correct.

DATED: 5-23-21

*Deborah Hollimon*
DEBORAH HOLLIMON,
Defendant

PLEA AGREEMENT                          A-2